PERRIN D. McELROY, Administrator of the Estate of ROBERT M. JACKMAN, Deceased, Respondent, v. WICHITA FORWARDING COMPANY, a Corporation, Appellant, No. 43343—263 S. W. (2d) 17.

Division Two, December 14, 1953.

Robert L. Jackson and Edward F. Aylward for appellant.

460

*Claude M. McFarland* and *W. Raleigh Gough* for respondent.

462

■■■■

**WESTHUES, C.**—Perrin D. McElroy, Public Administrator of Jackson County, Missouri, was appointed administrator of the estate of Robert M. Jackman, deceased. He filed this suit against the defendant Wichita Forwarding Company. In the first count of the petition, plaintiff asked damages in the sum of $15,000, alleging that the defendant company, through the negligence of one of its truck drivers, caused the death of Jackman. In the second count, $1,000 was asked for damages to Jackman's car. Jackman left surviving him a wife and three minor children. The family lived in Kansas. The collision of Jackman's car (which he was driving) with defendant's truck, causing Jackman's death, occurred in Kansas. The defendant is a Missouri corporation. A trial by jury resulted in a verdict for plaintiff in the sum of $15,000 on the first count, and $825 on the second count.

The defendant filed a motion for judgment on the theory that the evidence did not justify a verdict in plaintiff's favor and also a motion for new trial. The trial court overruled both motions and an appeal was taken to this court.

The defendant's principal point briefed is that the trial court should have directed a verdict for the defendant. The only evidence introduced by the defendant consisted of a number of photographs disclosing the damage to the truck and to the car involved in the collision and a few photographs of the roadway where the collision occurred. Defendant stated in the brief that the evidence was insufficient to justify a finding of negligence on the part of the defendant and also that the evidence showed that Jackman was guilty of negligence as a matter of law.

Plaintiff's charges of negligence were that the defendant operated the tractor-trailer at a high and dangerous rate of speed and that it was driven on the left side of the roadway.

A complete statement of the essential facts must be made. Jackman, age 34, was an employee of the Union Pacific Railroad Company,

working at Kansas City, Missouri. He lived on a small tract of land of about 3 acres near De Soto, Kansas. Jackman owned a car which he used in going to and from his home and his work. On February 28, 1950, shortly after midnight, while Jackman was driving home from work on Highway No. 10, a short distance north of Merriam, Kansas, his car came in contact with a tractor-trailer owned by the defendant. Jackman was driving south and the truck was going north. Jackman sustained injuries from which he died the same day. It was a dark night and a light rain was falling. Highway No. 10 was a two-lane macadam highway.

William J. Stobbe, who lived at Sunflower, Kansas, testified that he was driving south on Highway No. 10 at about 35 miles per hour shortly after midnight on February 28; that he noticed Jackman's car about 100 yards ahead of him; that when he was nearing the point where the collision occurred, he noticed headlights of a motor vehicle approaching from the south; that the Jackman car was on the west side of the center line of the roadway. Note his evidence as to what this witness saw:

"Q. All right, Mr. Stobbe, did you keep your eyes on the Jackman car continuously up to the time of the impact?·

"A. Yes, I did.

"Q. Did you see any change in the position of the Jackman car, that is any change in the rear lights of the Jackman car?

"A. No, I didn't.

"Q. From the time that you first observed it ahead of you, straight ahead of you, until the—

"A. No, there was no change. He was just going in a straight line.

"Q. What was the next thing you observed? What was the first thing you observed that indicated an accident or impact was going to take place?

"A. I didn't know at the time what was taking place. It appeared that a lot of red fireworks, sparks flying, and this big truck passed me on the left headed north.

\* \* \* \* \* \* \* \* \*

"Q. (By Mr. Gough) Where were these sparks? Were they on the highway or off the highway?

"A. They were on the highway, on my side of the highway.

"Q. On your side of the highway you saw these sparks?

"A. That's right.

"Q. Then you said that you observed a big truck passing you on your left?

"A. That is correct.

\* \* \* \* \* \* \* \* \*

"Q. Did you notice anything peculiar about the operation of this truck?

"A. Well, as he passed, the truck was accelerating very hard. It appeared that he was pulling a heavy load, and I noticed the rear wheels on the trailer were missing and the trailer part was down on the ground."

It was shown that the impact caused the rear wheels of the trailer to be severed and knocked from under the trailer. The evidence was that the points of impact were on the left side of the trailer a few feet in front of the rear dual wheels and on Jackman's car, on the left front of the car. After the impact, the left front fender of Jackman's car was found under the left rear portion of the trailer. The trailer moved 100 feet or more after the collision while Jackman's car stopped at about the place where the impact occurred.

Witness Stobbe testified that he stopped and observed the surroundings; that he noticed gouge marks in the roadway and from these marks, a line or scratch marks on the highway leading to the rear of the trailer; that one of these gouge marks was located on the west side of the center of the roadway. A number of other witnesses testified to the same effect. Note the evidence of Joe Wellington who took pictures (with a camera with flash bulb attachment) of the trailer shortly after the collision. On this point we quote from his evidence:

"Q. Where would you say that those marks occurred—first, in what general direction did those marks run?

"A. Parallel to the road.

"Q. Parallel to the road?

"A. That's right.

"Q. Where would you say the westernmost of those marks was with reference to the center line of the highway?

"A. They were to the west of the highway. The marks—the main portion of them were to the west of the center of the road.

"Q. Were those marks deep marks or shallow marks?

"A. If I recall right, they were rather deep.

"Q. All right. Now, Mr. Wellington, did you observe any continuation of the line of either one of those marks up the highway any distance?

"A. Yes. Some of the marks followed on up clear up where the truck came to rest following the impact.

\* \* \* \* \* \* \* \* \*

"Q. (By Mr. Gough) How far up the highway, going in a northerly direction, could you follow that line?

"A. Clear up to the rear of the truck.

"Q. Rear of the truck?

"A. Yes, sir.

"Q. What part of the truck?

"A. It evidently came from the very most rear of the truck,

The wheels were knocked out from under the truck, and it was down on the pavement.''

We are of the opinion that the evidence was ample to sustain a finding that the trailer portion of defendant's tractor-trailer was over the center line of the highway. The evidence of the driver of the car following Jackman's car was that Jackman's car was on his side of the road and that the sparks he saw were also on Jackman's side of the road. A jury was justified in finding that the sparks which this witness saw were caused by the impact. The marks on the roadway which the witnesses described as ''gouges'' and the marks leading from these gouges to the rear of the trailer were also evidence justifying a finding that when the rear wheels were knocked from under the trailer, it dropped to the roadway causing the deep gouges. Some of these were to the west of the center of the highway.

Defendant says that the Jackman car passed the truck and the front portion of the trailer in safety and, therefore, the Jackman car must have turned suddenly to the east and into the side of the trailer. That conclusion does not necessarily follow. The tractor-trailer may have been partially on the west side of the roadway and when the driver noticed Jackman's car approaching turned to his side of the roadway but too late to bring the rear of the trailer to his right side of the center line.

Defendant cites McGuire v. Steel Transportation Co., 359 Mo. 1179, 225 S.W. (2d) 699; Schoen v. Plaza Express Co., Mo., 206 S.W. (2d) 536, and other cases. Those cases are not in point. For example, in the McGuire case at page 702 of 225 S.W. (2d), this court said, ''There was no fact or circumstance in evidence from which it was a fair or reasonable inference that Beeson was negligent in failing to drive his truck 'as closely to the right-hand side of the highway as practicable.' '' The evidence we quoted from the record was ample to support a finding in this case that defendant's trailer was on the wrong side of the highway. The point must be ruled against defendant.

■ Defendant claims that Jackman, at the time of the collision in question, was contributorily negligent as a matter of law. The question of whether Jackman was negligent was submitted to the jury and by their verdict it was found that he was not negligent. There was substantial evidence in the record, some of which may be found in the portion above-quoted, that Jackman was not negligent.

■ Defendant assigns error because the trial court refused to exclude the three minor children from the courtroom and erred in allowing plaintiff's counsel to have them stand to be observed by the jury. The children were in the courtroom during part of the trial. However, the record shows that nothing unusual occurred. The only time their presence was called to the attention of the jury was when their mother was on the witness stand and counsel asked the boys to

stand and be identified. The record shows that the children were seated in the section of the courtroom reserved for spectators. Defendant cites Koeppel v. Koeppel, Mo. App., 208 S.W. (2d) 929. It will be observed that the trial court in that case ruled that the child should be removed from the mother's lap at the counsel table. The appellate court emphasized the fact that the court did not order the child from the courtroom. See 208 S.W. (2d) 935 (2). The present suit was filed on behalf of and for the benefit of the widow and minor children. We know of no rule of law requiring the exclusion of the children from the courtroom.

The final point preserved for review reads as follows: "Perrin D. McElroy, Public Administrator, was not the proper party plaintiff in the cause; the Probate Court of Jackson County had no power or jurisdiction to appoint an administrator in Jackson County where the only asset of the estate was a transitory cause of action accruing outside of the State of Missouri." (Citing cases)

The facts in so far as pertinent to the right of plaintiff as administrator to sue are these: Jackman, the deceased, lived in Kansas and owned no property in Missouri. The collision out of which this cause of action grew occurred in Kansas. The defendant corporation, who is being sued as having negligently caused Jackman's death, is a Missouri corporation. The Kansas death statute, Section 60-3203, G.S. Kan., 1949, authorizes the personal representative to sue within two years from the date of death. The amount to be sued for is limited to $15,000. The statute requires the suit to be filed for the benefit of the spouse and children and the amount recovered to be distributed to them.

Our statute, Section 507.020, VAMS, provides as follows:

"1. Whenever a claim exists under the law of another state, action thereon may be brought in this state by

(1) The person or persons entitled to the proceeds of such claim if he or they are authorized to bring such action by the laws of said other state;

(2) The executor, administrator, guardian, guardian ad litem or other person empowered by the laws of said other state to sue in a representative capacity if the person or persons entitled to the proceeds of such claim are not authorized to sue in such cases under the law of said other state.

"2. In the cases mentioned in subdivision (2) above, the proceeds of the action, resulting either from judgment or settlement, shall be paid to the person bringing such suit and such person is authorized to satisfy the judgment and execute release. Such person to whom the proceeds are paid shall have authority to distribute and pay same to the person or persons entitled thereto,

according to their respective interests therein, under the laws of said other state.''

The defendant corporation under the facts could be sued in this state. The Kansas statute authorized the personal representative to sue. Plaintiff in his petition alleged that he was the administrator of the Robert M. Jackman estate appointed by the Probate Court of Jackson County, Missouri; that he filed the suit on behalf of the widow and children.

In defendant's answer, it was admitted that plaintiff was the duly appointed, qualified, and acting administrator of the estate of Robert M. Jackman, deceased.

Under the facts stated, this suit can be maintained in this state. If defendant desired to question plaintiff's capacity as administrator to sue, the issue should have been raised by a specific negative averment as required by Section 509.140, VAMS; Board of Regents v. Palmer, 356 Mo. 946, 204 S.W. (2d) 291, l.c. 294 (12, 13).

We have disposed of all the points presented by defendant's brief. The judgment is hereby affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.